## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **KYLE DAVID RIX,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. _____** |
| | ) | |
| **FUJITSU TRANSACTION** | ) | **JURY DEMAND** |
| **SOLUTIONS INC.,** | ) | |
| **FUJITSU AMERICA, INC., and** | ) | |
| **SOLAI & CAMERON, INC.** | ) | |
| | ) | |
| **Defendant(s).** | ) | |

## COMPLAINT

COMES now the Plaintiff, by and through counsel, KYLE DAVID RIX individually and for this Complaint against Defendant(s), FUJITSU TRANSACTION SOLUTIONS, INC., FUJITSU AMERICA, INC., and/or SOLAI & CAMERON, INC. jointly and severally, and states as follows seeking relief for discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., Title I and V of the American with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101 et seq., to correct unlawful employment practices on the basis of disability and retaliation and failure to provide reasonable accommodations, and to provide appropriate relief to Plaintiff who was adversely affected by such practices.

## **PARTIES**

1.      Plaintiff, Kyle David Rix (hereinafter referred to as Plaintiff), is a citizen of the United States who resides in Hendersonville, Tennessee. He is and was at all times relevant to this Complaint a citizen of the State of Tennessee and a resident of Davidson County.

1

2.    Defendant Fujitsu America Inc. (hereinafter Defendant Fujitsu), is, upon information and belief, a corporation organized under the laws of the State of Tennessee and/or California, with its principal place of business at 1250 E. Arques Avenue, Sunnyvale, California, 94085 and may be served through registered agent CT Corporation System, 800 Gay Street, Suite 2021, Knoxville, Tennessee, 37929.

3.    Defendant Fujitsu Transaction Solutions, Inc. (hereinafter Defendant Fujitsu Transaction), is, upon information and belief, a corporation organized under the laws of Texas, with its principal place of business at 2791 Telecom Parkway, Richardson, Texas, 75082 amongst other numerous Fujitsu affiliates and/or subsidiaries.

4.    Defendant Solai & Cameron, Inc. (Defendant Solai), is, upon information and belief, a corporation organized under the laws of Illinois with its principal place of business at 3410 W. Vanburen, Chicago, Illinois, 60624 and may be served through registered agent Mallar Solai, 2335 N. Southport, Chicago, Illinois, 60614.

## JURISDICTION AND VENUE

5.    Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to the present claim occurred within this judicial district. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(l) and (3) of Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. § 2000e-5(f)(l) and (3), Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and is further authorized by Title V of the ADA, 42 U.S.C. § 12203(c), which incorporates by reference the enforcement remedies and procedures available under Section 107(a) of the ADA, 42 U.S.C. § 12117(a).

2

6.     On or about November 9, 2015, Plaintiff filed a charge of discrimination (No. 494-2016-01159) against Defendant Fujitsu America Inc. and (No. 494-2016-01623) against Defendant Solai & Cameron Technologies, Inc.  with the Equal Employment Opportunity Commission ("EEOC"), alleging disability and age discrimination.  On or about October 4, 2016 as to Defendant Fujitsu and October 27, 2016 as to Defendant Solai, Plaintiff received a notice of suit rights from the EEOC, advising him that he had 90 days to file against Defendants under Title VII and the ADA.  See attached exhibit Notice of Right to Sue letters.

7.     Plaintiff has filed this Complaint within the aforementioned 90 day right to sue period and all conditions precedent to the institution of this lawsuit have been fulfilled.

8.     At all relevant times, Defendants have continuously been an employer engaged in an industry affecting commerce within the meaning of Section 101(5) of the ADA, 42 U.S.C. § 12111(5), which incorporates Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e(b), (g) and (h).  Furthermore, Defendants have continuously operated their business in Tennessee and this jurisdiction with at least fifteen (15) employees at various locations for each working day in each of twenty (20) or more calendar weeks in the preceding calendar year.

9.     At all relevant times, Defendants have been covered entities under Section 101(2) of the ADA, 42 U.S.C. §12111(2).

10.     A joint employer relationship exists where two entities "share or co-determine those matters governing essential terms and conditions of employment." EEOC v. Skanska USA Building, Inc., 550 Fed. Appx. 253, 256 (6th Cir. 2013) (citing Carrier Corp. v. NLRB, 768 F.2d 778, 781 (6th Cir. 1985)). To determine whether an entity is a joint employer, the Sixth Circuit looks at the "ability to hire, fire or discipline employees, affect their compensation and benefits, and direct and supervise their performance." Id.

3

11.     Plaintiff asserts that Defendant Fujitsu and/or Defendant Fujitsu Transaction interviewed, selected, trained, and/or had authority to discipline Plaintiff and directed and supervised Plaintiff's work as a joint employer with Defendant Solai.  Furthermore, Defendant Fujitsu and/or Defendant Fujitsu Transaction terminated Plaintiff from any further performance of duties and employment. Plaintiff was provided an employee badge captioned "Fujitsu." Plaintiff submits sufficient facts herein to support this contention that there exists a joint employer relationship between all Defendants such that each "share or co-determine those matters governing essential terms and conditions of employment." Defendant Solai remotely recruited or accepted Plaintiff's resume for consideration without any in-person interview and at no time supervised or directed his work.  Defendant Solai maintained wage records and remitted wages through direct deposit.  Defendant Solai continued to be an employer after Plaintiff's duties were terminated by Defendant Fujitsu and/or Defendant Fujitsu Transaction and had the opportunity to provide additional employment opportunities but failed to do so in retaliation for Plaintiff's filing an EEOC charge against Defendant Fujitsu and/or Defendant Fujitsu Transaction.  Defendant Solai communicated to Plaintiff that he had been terminated while on the job and clearly at the instruction of Defendant Fujitsu and/or Defendant Fujitsu Transaction.

12.     At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of Section 101(8) of the ADA, 42 U.S.C. §12111(8).

13.     The unlawful discrimination and/or retaliation alleged below were committed within the jurisdiction of the United States District Court for the Middle District of Tennessee, Nashville Division.

14.     Plaintiff asserts he was discriminated against on the basis of his disability.  As such, Plaintiff falls within the protected class as a "person" and/or male employee as defined in

42 U.S.C. § 2000e(a) who applied for and accepted employment with Defendants. Furthermore, Plaintiff asserts that he was discriminated against and subjective to disparate treatment "because of his disability" and/or "on the basis of disability."

15.    Defendants treated other employees who were not disabled better than Plaintiff.

16.    Plaintiff reported the discriminatory conduct and/or disparate treatment to managers and/or supervisors.  In the alternative, managers and/or supervisors perpetrated the discriminatory conduct and/or retaliation imputing notice to Defendants.  Defendants were on notice and failed to redress the discriminatory conduct and/or retaliation.

17.    Plaintiff was terminated upon a pretext for not performing his duties with sufficient speed and/or efficiency when in fact it was based on his disability, opposition to the discriminatory conduct, and/or disparate treatment reported to managers and/or supervisors.

18.    Defendants are "employer(s)" as that term is defined by 42 U.S.C. § 2000e(b).

## STATEMENT OF FACTS

19.    The discriminatory conduct alleged herein occurred in connection with Plaintiff's employment with Defendants as a technician performing duties involving installation, repair, and maintenance of point of purchase and/or scanning machines for retailers located in middle Tennessee.

20.    Since at least January 30, 2016, Defendants have engaged in unlawful employment practices at its Nashville location in violation Title I of the ADA, 42 U.S.C. §12111(a) and (b).

    a.   failing to reasonably accommodate Plaintiff's disability.

    b.   discharging Plaintiff, due to the need to accommodate Plaintiff's disability.

5

21.    Defendants' discriminatory practices include, but are not limited to: (1) creating or permitting a hostile work environment heavily charged with discrimination; (2) maintaining wages, job assignments and other conditions of employment that unlawfully operate to deny equal opportunity to Plaintiff because of his disability; and (3) wrongfully terminating Plaintiff from employment because of his disability. Plaintiff communicated his disability of cerebral palsy to Richard Galbreath during an interview after he asked Mr. Rix why he spoke awkwardly and/or slowly. Richard Galbreath as a member of management with Defendant Fujitsu and/or Defendant Fujitsu Transaction had the authority to materially alter the terms and conditions of Plaintiff's employment. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his disability, in violation of Title I of the ADA, 42 U.S.C. §12111.

22.    The unlawful employment practices complained of above were and are intentional. Furthermore, Defendants acted with malice and ill will toward Plaintiff and without regard to his legal rights in discharging him and otherwise discriminating against him with regard to tenure, terms, conditions, or privileges of employment, and other matters directly or indirectly related to his employment because of his disability.

23.    Plaintiff was assigned to perform services for Defendants through staffing firm Solai & Cameron Technologies.

24.    Hima Rao employed with Solai & Cameron Technologies presented the opportunity to Plaintiff in an email dated January 6, 2016 describing the rate of pay, equipment provided, job description, and daily requirements for the technician.

25.    Plaintiff was hired to install, repair, and/or maintain point of sale and/or scanning machines in retail locations.

6

26. Plaintiff was under the direct supervision of Richard Galbreath as a manager having the authority to materially alter the terms and conditions of Plaintiff's employment.

27. Plaintiff while employed by Defendants had cerebral palsy. Plaintiff disclosed this medical condition to Richard Galbreath during an interview. There were numerous other technicians and/or employees that had actual knowledge of Plaintiff's disability and perpetrated acts of discriminatory conduct.

28. Plaintiff was not provided a van and/or tools to perform his job duties as was stated in the January 6, 2016 email referenced herein. The other technicians were provided a vehicle and tools. Mr. Galbreath committed to Plaintiff the same during the interview.

29. Approximately three weeks after start date, Richard Galbreath stated to Plaintiff that he would not be provided tools after Plaintiff requested the same.

30. Approximately thirty days after start date, Plaintiff performed without issue or complaint. Mr. Galbreath did not reprimand or counsel Plaintiff for his performance during this period of time.

31. Approximately thirty days after start date, Plaintiff was being trained by James Denny who was an experienced technician. Mr. Denny stated to Plaintiff that handicapped people should not drive vehicles after bringing up fact during social conversation that he had a handicapped placard for parking. Plaintiff did not state specifically the handicap or disability was cerebral palsy.

32. Approximately two weeks later, James Denny was inquired by another employee Brian Kees about Plaintiff's voice. James Denny did not inform Brian Kees what the specific disability was causing the issue of Plaintiff's voice.

7

33. Approximately a few weeks later, Richard Galbreath communicated to Plaintiff that he was too slow for his preferences. Plaintiff had performed his duties for eight or more weeks without reprimand or counsel by Richard Galbreath.

34. During Plaintiff's tenure of employment, a number of employees stated to Plaintiff that he "was being set up to fail" as a pretext for termination. Brian Cumberlander expressed this statement to Plaintiff after Plaintiff asked when would he receive a tool bag and proper tools to perform a task. Mr. Cumberlander was clearly intimating that Plaintiff should not expect to receive such tools and/or equipment. James Denny expressed a similar statement in effect to Plaintiff after discussion about receiving tools.

35. During the last week of April 2016, Plaintiff was performing his duties for a retailer and received a phone call from Irene Regaspi with Solai & Cameron Technologies informing him he was terminated from employment.

36. Plaintiff approached Brian Kees to return company cell phone, laptop, and parts and inquired who communicated with the staffing firm. Mr. Kees stated Richard Galbreath had communicated with them.

37. Throughout Plaintiff's tenure of employment, the hostile work environment was heavily charged with an animus towards Plaintiff and/or there existed a pervasive pattern of discriminatory conduct averred herein. Richard Galbreath perpetrated a pretext of Plaintiff not performing his duties in an efficient, timely, and/or productive manner.

38. Plaintiff was admonished by a manager or supervisor of Defendant Solai, Irene Regaspi, for filing a charge against Defendant Fujitsu and/or Defendant Fujitsu Transaction. Ms. Regaspi specifically referenced the charge and scolded Plaintiff that such act was improper, not warranted, and not professional. Defendant Solai has had sufficient opportunity to assign or

8

place Plaintiff into other employment opportunities. Plaintiff communicated with Defendant Solai again inquiring about any other opportunities and whether they intended to place him. Irene Regaspi and/or Hima Rao who are human resource managers Defendant Solai communicated a clear rejection to assist him any further with employment.

39.     The effect of the unlawful employment practices complained of herein has been to deprive the Plaintiff of equal employment opportunities and to otherwise adversely affect his status as an employee because of his disability. Such discrimination and/or retaliation practices were performed intentionally with malice and/or reckless indifference to the federally protected rights of Plaintiff.

40.     The basis for termination proffered by Defendants are false and serve as a pretext for termination therefore deserving no credence as a legitimate non-discriminatory act.

41.     As a direct and proximate result of Defendants' actions as set forth above, Plaintiff has suffered:

c.  Loss of back wages;

d.  Loss of insurance benefits;

e.  Loss of other fringe benefits;

f.  Loss of Future earnings and front-pay;

g.  Loss of reputation;

h.  Humiliation, embarrassment, and loss of self-esteem; and

i.  Loss of time and money in endeavoring to protect him from Defendants' unlawful discrimination, including costs and reasonable attorneys' fee of this action.

9

42.     Plaintiff has suffered damages as a result of Defendant's discriminatory actions in excess of $75,000.00.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief against Defendants:

1.     Declaration that the Defendants violated Plaintiff's rights with regard to disability discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., and/or ADA as referenced herein.

2.     Compensatory damages with prejudgment interest to Plaintiff for all salary, back pay, front pay, and benefits lost due to Defendants' unlawful actions in an amount not less than $300,000.00 or to be determined;

3.     Damages to Plaintiff for emotional distress, loss of enjoyment of life, embarrassment, and humiliation in an amount to be determined;

4.     Punitive damages to Plaintiff in an amount to be determined;

5.     Award to Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees, costs, and expenses; and

6.     Such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/Roland Mumford

Roland Mumford BPR 026495
Law Offices of Roland Mumford & Assoc.
242 West Main Street, No. 223
Hendersonville, TN 37075
Phone: 615.348.0070
Fax: 614.246.4110
Email: roland@mumfordlaw.net

Attorney for Plaintiff